**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

LENT CHRISTOPHER CARR, II;　　　　　)
CONCERNED CITIZENS FOR COMMUNITY　)
ACTION (CCFCA); ISAAC JENKINS;　　　)
ANGELA SCHWARZ, and　　　　　　　　)
HARLEY JOHNSON,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiff(S),　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　Case No.: 5:22-CV-00353-FL
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　**Judge:**
NORTH CAROLINA STATE BOARD　　　　)
OF ELECTIONS,　　　　　　　　　　　)
　　　　　　　　　Defendant.　　　　　)
　　　　　　　　　　　　　　　　　　)

**COMPLAINT FOR DECLARATORY AND**
**PERMANENT INJUNCTIVE RELIEF AND**
**(PLAINTIFF'S MEMORANDUM OF LAW & AUTHORITY)**

1. This Court has subject matter jurisdiction because the Board of Election's certification of the election is void and would not deprive this Court of subject matter jurisdiction in any event to issue an EMERGENCY DECLARATORY AND PERMANENT INJUNCTIVE RELIEF [ORDER] in the above entitled Election Fraud "Cover-up" case, to wit, candidate Allen Thomas' (Incumbent) illegal conundrum act of paying [a] voter or [voters] an undisclosed amount of money in exchange for the elector's vote that was in fact not only caught or observed by multiple witnesses, but by the Hoke County Board of Election Director herself for Hoke County; Thomas' illegal act of at least being caught TWICE in an unauthorized *"Handicap Voting Curbside Voting Booth,* in violation of the fifty 50 foot Statutory Rule, as Thomas himself admitted—paying a hundred $100.00 to an Elector who drove another voter to the Election Handicap Voting Booth who was there to cast his respective vote, and money passed the hands of the elector there to vote; his (Thomas) unscrupulous and unlawful act to bribe Dr. Carr, not to run in the 2022 Primaries by offering a *quid pro quo* of Twenty Thousand

$20,000.00 US Dollars, and another Challenger/Candidate, Carlton Ray Barber, as telephone calls from Thomas was initially made from His Commissioner's Phone, and shortly thereafter from his personal cell phone, *inter alia.*

2. To that end, Plaintiff, Dr. Lent Carr, has no other recourse for redress due to The North Carolina State Board of Elections own admission in The Wake County Superior Court that The Agency creature subsumed under statute failed to act and investigate these and other Election crimes committed by Allen Thomas, and his [Incumbent] cohort sample committee ballot team. Upon information and belief, The North Carolina State Board of Elections (hereinafter "NCSBE") comprised of 3 Democrats and 2 Republicans failure to act was and continue to be carefully choreographed to run out North Carolina General Statutes Statutory timeframes codified in an effort coordinated with The Democratic Party to cover-up this egregious crime for political expediency as the stakes are high, and Allen Thomas' and his cohort Ballot Committee Team's will and does illuminate factual and actual fraud that could very well cast doubt on others endorsed by The North Carolina, and Hoke County's Democratic Parties, and the integrity of [a] *free and fair election.*

3. Plaintiff, Dr. Lent C. Carr, II, a 2022 Primary Challenger/Candidate for Hoke County commissioner, alleges a "concerted wide-spread political vote buying strategy scheme." (Petition for Writ of Mandamus, p 3). In February 2022, Dr. Carr reported to the Hoke County Board of Elections that Allen Thomas, another candidate, had offered to pay Dr. Carr $20,000 to not run for county commissioner. (Carr Affidavit, ¶ 4). On 9 May 2022, he reported that he and his campaign believed, and did observe Mr. Thomas and his committee team bribing voters throughout the entire Primary Election cycle. A sufficient number of electors believed to taint the entire election process, especially whereas the moral and support of the voters were visibly in opposition towards the incumbents as the registered voters

non-turn-out vote proved. (Carr Affidavit, ¶ 5). The next day, the Hoke County Board of Election'sDirector caught Mr. Thomas giving money to a voter at a handicap curbside voting booth. (Carr Affidavit, ¶ 6). Dr. Carr's belief that Mr. Thomas and other candidates were buying votes—expressed on May 9—was confirmed on May 10.

4. Dr. Carr filed a protest with the Hoke County Board of Elections. (Love Affidavit, Ex. 1, p 9-38) He supported that protest with affidavits from Dr. Myra R. McKoy and Dr. Deltarina V. Carr. *Id.* Rather than holding a hearing or receiving evidence, the Hoke County Board of Elections denied Dr. Carr's protest because it concluded "that the protest does not establish probable cause to believe that a violation of election law or regulatory of misconduct has occurred." (Love Affidavit, Ex. 1 p 39). Ironically, it was even questioned by the local News Journal, what was had at the supposed Protest Consideration had before The Hoke County Board of Elections—"A three (3) Minute 'Protest Consideration Hearing' [or] A 'Protest Consideration VOTE?'" This was the sentiments shared by the many Hoke voters who showed up in huge numbers as the video link shows: **"BOARD DISMISSES ELECTION PROTEST--'Meeting Hears No Arguments, *Only Held for Board to Cast Vote.'"** See e.g., https://www.thenews-journal.com/graphics/NJ99a.pdf

5. Dr. Carr then appealed to the State Board of Elections. The State Board of Elections likewise summarily denied Dr. Carr's protest, without a hearing or receiving evidence. (Love Affidavit, Ex. 2). Dr. Carr then appealed to The Wake County Superior Court seeking a writ of mandamus. (Carr affidavit, ¶ 11). Dr. Carr provided copies of his petition to the NCSBE on 23 June. *Id* Though the NCSBE and The Wake County Superior Court both were provided the necessary copies and filing fee on 23 June, Dr. Carr was later informed that said Writ delivered by US Postal Service—Certified Return Receipt delivered to the new Courthouse inadvertently, and thus causation why it was Time

Stamped 27, June by The Wake County Superior Clerk's Office. Yet the same was still Timely Filed. However, Dr. Carr, was informed by The Wake County Superior Court's Trial Administrator via email of the Plaintiff's non-contributed delay on 12, July, in pertinent part: *Dr. Carr, After review of the file from your calendar request your motion to stay should be set this week. Judge Smith will hear your motion to stay on Friday (7/15/22) in person at 9:30am in courtroom 10-A...* " Please note that said stay was ultimately denied as a result of The NCSBE's, Counsel misplaced argument that because of the court's delay beyond the statutory ten 10 day window to grant such as moot under a *void decision* by the NCSBE's non binding erroneous decision that's neither binding on Dr. Carr, The Superior Court, this US District Court or anyone for that matter. Not to negate the fact that such is/was in contravention to North Carolina General Statute; a gross violation of Plaintiff's Constitutional Amendment rights subsumed under Article 1 and 14 due process protections. [A] "void order is a nullity, binding on no one, and may be freely ignored." *R. E. Uptegraff Mfg. Co. v. Int'l Union of Elec., Radio, & Mach. Workers*, 20 N.C. App. 544, 549, 202 S.E.2d 309, 313 (1974). The Board concedes Dr. Carr timely filed his protest with the Hoke County Board of Elections, the State Board of Elections, and the Superior Court of Wake County. Therefore, by denying Plaintiff's Stay on the premises of mootness, and thereafter dismissing the Writ of Mandamus/Appeal under the circumstances was an abuse of discretion, and a violation of Dr. Carr's rights guaranteed by the First and Fourteenth Amendments to The United States Constitution.

6. There are four reasons why this Court has subject matter jurisdiction. First, the State Board of Elections' certification of the election is void. Second, under North Carolina precedent the certification does not deprive this Court of subject matter jurisdiction. Third, the Administrative Procedure Act also grants this Court jurisdiction to review the State Board of Elections' decision, and Fourthly this case presents one of the most egregious violations of the right to due process, as guaranteed by the First and

Fourteenth Amendments to The United States Constitution's guaranteed protections. Plaintiffs respectfully request that the Court declare NCSBE's failure follow North Carolina's Statutory requirements, and to investigate Allen Thomas' admitted crimes, and thereafter in the normal course holding an Election Fraud candidate accountable, not turning a blind eye to said crimes due to undue pressures by political actors intervening obstructions of justice as violative against the integrity of our democracy's free and fair elections principles, certainly unconstitutional. Therefore, Plaintiffs prays

this Court enter an order directing NCSBE to decertify its *void* Hoke County Commissioner's Election/ Nomination as unconstitutional; issue its Order disqualifying Allen Thomas, and his cohort Ballot Committee Team of Incumbents in the event they are found to have played an integral part in the above-referenced Election Fraud; order NCSBE to place plaintiff on North Carolina's 2022 general election ballot; order a special prosecutor outside of The Attorney General's Office, and The NCSBE to Investigate the "pay for vote scheme;" declare the NCSBE's dismissal of plaintiff's Appeal void as a nullity and unconstitutionally and statutorily in foul with North Carolina General Statutes as a violation of plaintiffs First and Fourteenth Amendment rights guaranteed under The United States Constitution and The State of North Carolina's Constitution due process jurisprudences. Each reason independently suffices to give this Court subject matter jurisdiction.

### JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this case pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331, because Plaintiffs' claims arise under the First and Fourteenth Amendments to the United States Constitution.

8. This Court has personal jurisdiction over NCSBE because NCSBE is an agency of the State of North Carolina and conducts its business in North Carolina.

9. Venue is proper in this Court because all Plaintiffs are residents of North Carolina, Defendant's primary office is in Raleigh and a substantial part of the events giving rise to this action occurred in this judicial district. See 28 U.S.C. § 1391(b)(1),(2).

## PARTIES

10. Plaintiff Dr. Lent Christopher Carr. II,  is/was a Democratic nominee for Hoke County Commissioner 2022. He resides in Raeford, North Carolina, (Hoke County) where he is a registered voter and intends to remain and vote in future elections. Dr. Carr, seeks to campaign for, speak and associate with, and vote for Democratic candidates, or whom his moral conscience is aligned as an American Citizen.  Carr is harmed by NCSBE's failure to act in accordance with North Carolina General Statutes, The United States Constitution, North Carolina Constitution and its Oath as creatures of NCGS and Laws as codified—which has violated Plaintiff's Constitutional protections guaranteed pursuant Amendment One and Fourteen, and prevents him and his constituent base from campaigning for a free and fair General Election due to fraudulent cover-up of at least one incumbent candidate who should have been immediately disqualified, investigated, and prosecuted to the fullest extent in which the law permits for violative acts in violation of North Carolina General Statutes and Election Laws respectfully, associating with, supporting and campaigning like other Candidates similarly situated who were devoid of taint of Election Fraud, and are actively holding campaign rallies, fundraising and building voter participation—but for The NCSBE's failure to act in protecting Hoke's citizenry from those who , i.e., Allen Thomas, who disembodies our strict Election Laws and fair Election processes that in this case has disenfranchised thousands of Hoke County Voters—candidates, including himself, and prevents  Dr. Carr from fully participating in North Carolina's electoral process being one who've

obeyed the rule of law and election engagements, and hinders his ability to grow and develop political voting base because NCSBE and outside influence has chose to insulate a flawed candidate who has caused a shadow and distrust in Hoke's Election Process and questions of integrity of a free and fair election .

11. The North Carolina based Concerned Citizens for Community Action (CCFCA) is the North Carolina state affiliate of the "WE THE PEOPLE OUTREACH" for Hoke County, North Carolina Chapter. Dr. Isaac Jenkins, is the North Carolina Branch Founder/CEO; Angela Schwarz, President and Bishop Harley Johnson, Board Member—each Plaintiffs to this cause of action as representative of Hoke County Electors disenfranchised, and in their respective Official Capacities. As a non-partisan independent Organization CCFCA seeks to elect candidates to all levels of public office in North Carolina, but it is presently unable to have its endorsed Candidate, Dr. Lent Carr, placed its on the ballot because NCSBE declined to act the above-stated Voter Fraud during and in relation to the 2022 Primary held in Hoke County, North Carolina, and as a result of The NCSBE's VOID decision that does not follow North Carolina's Statutory requirements, and has thus violated their First and Fourteenth Amendments Constitutional protections under due process. CCFCA, and Hoke County Voters (constituents) were all injured by NCSBE's actions and inactions, which prevents it from truly and fairly participating in North Carolina's electoral process and hinders its ability to associate with its supporters, to engage in political speech and build support among the electorate, and to grow and develop as a non-partisan elector based organization as a direct and proximate result of NCSBE's failure to act on the behalf of the electors to cure this gross Election Fraud matter in accordance with well established election law, statute, procedures and constitutionally. CCFCA maintains a business address in Hoke County, North Carolina.

12. Defendant North Carolina State Board of Elections is an agency of the State of North Carolina charged with the administration of the elections process, including the certification of Elections/Nominees process not tainted by fraud as is the crux of this case by which political party, and its nominees are legally placed upon North Carolina's Ballots, and are qualified to hold that respective office if they're successful during The North Carolina's general election process. NCSBE is required under state law to administer their duties as creatures of our North Carolina General Statutes, who are expected to fairly investigate and determine the sufficiency of all Protest Matters that may arise, and if an election fraud is committed, it is contravention to attempt to cover such fraudulent activity regardless of political pressures or partisan favoritism. To do as has been done here in this present matter is to subvert Justice and bring into question the fairness of the election process and integrity thereof. In hindsight, The NCSBE actions and inactions has exacerbated the election frauds, and the electors and Plaintiffs has no remedy at law excepting judicial redress by this Court. Especially, where Hoke County citizens and Plaintiff, Dr. Carr, was left to fend for themselves without the benefit of The People's Attorney General Office aggressively pursuing this clear and convincing fraud violation of our State's General Statutes, opting rather, by request of the questionable request that it essentially represent the offender of multiple election violations under the auspice of representing The State in name only. The NCSBE could not have committed a more amplified miscarriage of justice, than to have chosen to represent a 2022 Primary Candidate's (Allen Thomas) admitted and observed crimes caught by The very Director of The Hoke County Board of Elections; witnessed by Affiants; Photographed, and videoed *inter alia.*

## FACTUAL ALLEGATIONS

**I. The Board exceeded its authority under N.C.G.S. § 163-182.11, making its decision void.**

The State Board of Elections is a creature of statute. It only has the powers the General Assembly has expressly granted it. Those powers are contained chiefly in Chapter 163. N.C.G.S. § 163-182.11(b) defines what the Board "may" do when it receives an appeal from a county board of elections' decision on an election protest. The State Board has five options: (1) decide based on the record, (2) request a supplement to the record and decide, (3) receive additional evidence and decide, (4) hold its own hearing, or (5) remand to the county board for further proceedings. Notably absent is any authority to deny the appeal without either receiving evidence or holding a hearing. Yet that is what the Board of Elections did here.

N.C.G.S. § 163-182.11(b) does not give the Board of Elections authority to summarily deny an appeal because of the Board of Elections' procedural posture. The Board is, in effect, sitting as a trial court. That is why N.C.G.S. § 163-182.11 requires the Board to "follow the procedures" in § 163-182.10 (c) (on conduct of hearings) and (d) (requiring findings of fact and conclusions of law). An unsuccessful petitioner to the Board of Elections must petition The Wake County Superior Court for redress. But that Court sits as an appellate court. Receiving no evidence, reviewing no record, holding no hearing, and making no findings of fact deprived that Court of the ability to properly review the Board of Elections' decision, and in like manner this Federal Court. A silent record is no record at all.

The Board of Elections' decision exceeds its authority under Chapter 163 and is, therefore, void. A "void order is a nullity, binding on no one, and may be freely ignored." *R. E. Uptegraff Mfg. Co. v. Int'l Union of Elec., Radio, & Mach. Workers*, 20 N.C. App. 544, 549, 202 S.E.2d 309, 313 (1974). *Id.* The Board of Elections' void order is not a final decision, cannot be the basis for an election certification, and does not bind this Court, Dr. Carr, or anyone else.

**II. This Court retains jurisdiction to reverse the Board's *ultra vires* acts, even after the Board has certified election results.**

Even if the Board of Elections' order were a final decision and it properly certified the election results, that would not deprive this Court of subject matter jurisdiction. The Board of Elections argues this case became moot because the Board certified the election's winner having full knowledge that Dr. Carr, had timely filed his Motion for Stay and Writ of Mandamus/Appeal prior to The Wake County Superior Court's review of this egregious matter on the merits. Upon information and belief, this was so done strategically in order for The NCSBE to employ the doctrine of mootness, and to hopefully make this matter of election fraud die and go away. The Board argued the Superior Court, nor any other Court for that matter—including this United States District Court, cannot order the Board to reconsider its final decision, even if that decision was wrong. We disagree, as any and all delays or rushed Certification of Election/Nominations were not attributable to to The Plaintiffs, but rather NCSBE and as a direct and proximate result of the Superior Court's misplacements of Dr. Carr's Writ and Stay as admitted and highlighted earlier whether by design or otherwise respectfully. Dr. Carr's Writ of Mandamus and Stay was deposited in The United States Postal Service on June 23, 2022, but was not Time Stamped by The Clerk's Office until June 27, 2022, and even after then it was held in abeyance for at least several additional days prior to the Court Administrator's email submission noted above.

A simple hypothetical shows why this Court has jurisdiction and can order the Board to reconsider its decision. Suppose a petitioner files an appeal with the Board which the Board denies. The petitioner waits until the tenth day to appeal to this Court. At 4:50 PM on the tenth day after the Board's final decision, this Court grants a stay. But the petitioner cannot serve the Board with a copy of the stay in time. On the eleventh day, the Board certifies the election's results. The Board does not receive a copy of this Court's stay until three days later. Is this Court powerless to enforce its stay? Does this Court lack jurisdiction to order the Board to reverse its void certification of the election's results?

The North Carolina Supreme Court has directly addressed whether the county board of elections certification of the results of a county commissioner's election deprive the courts of jurisdiction. The defendant in *Harkrader* argued the courts had no jurisdiction because "the board of county canvassers declared the defendant elected and issued him a certificate of election" and "judicially determined the result of the election and finally passed upon all the matters in controversy." *Harkrader v. Lawrence*, 190 N.C. 441, 442, 130 S.E.2d 35, 36 (1925). The county board had certified the elections results because the plaintiff did not object in time. *Id.* The Supreme Court rejected the defendant's argument the case was moot: "[n]either the declaration of the board of county canvassers as to the results of the election nor the issuance of a certificate of election can deprive the Superior Court, nor a higher court of its jurisdiction to inquire into the regularity of the election." *Id.* Certifying the election does not deprive the courts of jurisdiction because "[t]he county canvassers do not judicial determine the result of the election." *Id.* The same is true here.

This Court can and should reverse void decisions the Board makes. The North Carolina Supreme Court has done just that for a century. In 1922, the North Carolina Supreme Court reversed the State Board of Election's decisions because the board "exceeded its authority." *Rowland v. Board of Elections*, 184 N.C. 78, 81, 113 S.E.2d 629, 630 (1922). The State Board of Elections has only "ministerial or administrative powers," not judicial powers. *Id.* It cannot make judicial decisions without entering the authority only granted to North Carolina's courts and General Assembly. Chief Justice Clark's dissent shows just how far the *Rowland* court went. Chief Justice

Clark wrote that "the court was without jurisdiction to compel the board of elections to reverse their findings and declare a specific person the candidate." *Rowland* at 84, 113 S.E.2d at 632. The Board of Elections makes the same claim today—but the North Carolina Supreme Court rejected it in 1922 and this Court should reject it today.

**III. Even if the Board decision is a final decision, this Court can review it under the Administrative Procedure Act.**

Finally, this Court's jurisdiction is not limited to remedies under Chapter 163. The Board of Elections is an administrative agency. The Administrative Procedure Act expressly gives this Court authority to review the Board's final decisions. N.C.G.S. § 150B-45(c). It can review those decisions provided a petitioner seeks review within 30 days of receiving the Board's final decision. Dr. Carr sought this Court's review within 10 days of the Board's purported final decision as was claimed to have been Amended for err in the 7, June Order; never presented to The NCSBE's Board Members for approval of reconstruction, and has equated into nothing less than *"CONSTRUCTIVE AMENDMENT OF ORDER."* The Administrative Procedure Act gives this Court further jurisdiction to review this case and grant the relief prayed.

Because the State Board's decision is void, its certification of the election results does not deprive this Court of jurisdiction, and the Administrative Procedure Act also gives this Court subject matter jurisdiction.

### IV. Factual Allegations and Procedural History

Dr. Carr was a candidate in the Hoke County Commissioners primary election held on 17 May 2022. Dr. Carr was unsuccessful but alleges irregularities or improprieties that tainted the results of the election and cast doubt on its fairness. N.C.G.S. § 163-182.13(a)(4). Another candidate in that election, Allen Thomas, was photographed, videoed, caught redhanded giving money to a voter at a curbside handicapped voting booth site during the election. That is, after Allen Thomas, walked over to his Bank at PNC Bank; withdrew and undisclosed amount of US Currency from an ATM Machine; walked back

into the handicap voting booth, and handed what he claimed and admitted in an incident report and elsewhere—that he gave a one hundred dollar $100.00 Bill to the passenger voter of a gray pickup truck, who in turn passed an undisclosed amount of money to that driver who had voted only three days preceding the exchange of money from Incumbent Allen Thomas' hands to the elector's hands—all occurring in an unauthorized handicap voting booth.

This Court should issue the Emergency Permanent Declaratory Injunctive Relief because the November County Commissioners' election is imminent,  Mr. Thomas may take office in that election, and Mr. Thomas may benefit from bribery while in office, and escape legal ramifications and accountability for his election fraud acts that as of date has been insulated by The NCSBE, The Democratic Party and appearing to your Plaintiff--The North Carolina Attorney General's Office whose fiduciary duty to North Carolina citizens is to investigate and prosecute such nefarious crimes. Dr. Carr's case has factual and legal merit.


Dr. Carr came in fourth in the Democratic Party's May 2022 primary to select "ballot committee candidates" who Teamed up with Allen Thomas, for the Hoke County Board of Commissioners. The top three primary candidates became the Democratic Party's candidates for the general election although The NCSBE was fully aware of the election fraud matter, claimed to have investigated the same—yet their selected Attorney General Special Deputy Counsel, in Superior Court before Judge Graves represented to the court that no such investigation has taken place. Dr. Carr's Counsel, Attorney Daniel Gibson, then inquired before the court, and counsel for The NCSBE if at all possible an investigation could ensue prior to the purported July 25, 2022, ballot printing since The NCSBE had dropped this critical by erroneously claiming that it had been so investigated. To that query opposing counsel tentatively agreed that it could—upon information and belief we are of the belief that what The NCSBE is attempting in this case is to continue its efforts of running out statutory time restraints as has

been their practice in this Protested matter to delay, stall, and ride the doctrinal legal wave of *"mootness"* as a end means to deny Plaintiffs their First and Fourteenth Amendment Rights to due process. Moreover, *shocking to the Conscious mind* Plaintiff, Dr. Carr, was duly informed by The Hoke County Elections Director, that NCSBE's Associate General Counsel, Paul Cox, had issued an email directive to her that no ballots are to be printed for the Hoke County Commissioner's Race until further notice. Plaintiffs were informed of this peculiar change on or about August 17, 2022.

Plaintiffs believe it is worth noting that in the event that either incumbent candidate is under, or have been investigated pre and/or post Petition, disqualified, resigned or planning to do so—or even ordered to forfeit their election/nomination certification as prematurely and rushed issue by NCSBE as a direct and proximate result of election law violations (more particularly Allen Thomas) it is equally critical that a Declaratory Injunction issue because in the event, as has been the dubious tactics of defendant NCSBE to strategically play the egregious game premised on the doctrine of "mootness," such would further obstruct Plaintiff's Fourteenth Amendment due process right guaranteed under The United States Constitutional protection clause, to wit, giving The Hoke County Democrat Party an unjust enrichment and benefit to exclude Dr. Carr from filling such County Commissioner position in which he duly filed for candidacy, campaigned for and represented a sizable quadrant of Hoke citizenry registered voters during the 17 May 2022, Primary Election. See e.g., G.S. § 163-114 ("If any person nominated as a candidate of a political party for...resigns. Or for any reason becomes ineligible or disqualified before the date of the ensuing general election, the vacancy *shall* be filled by appointment according to the following instructions: '[T]he party executive making [a] nomination in accordance with the provisions of this section shall certify [the name of its nominee] to the chairman of the board of elections, State or county, that has jurisdiction over the ballot item under GS 163-182.4.'" also see GS 163-165.3(c)). (Emphasis in original).

In retrospect, what such delegated authority pursuant to Statute would mean here is that irrespective of the overwhelming and indisputable evidence in which establishes "probable cause" to believe that Allen Thomas, did in fact commit multiple Election Fraud Violations in the May 17, 2022's Primary, in contravention to our well established North Carolina General Statutes Laws that makes it a Felony to "pay money or anything of value" to an elector in exchange for their respective vote or otherwise, and by being in an unauthorized "handicap-curbside parking voting booth, also in violation of North Carolina General Statutes, would unjustly give The Hoke County Democratic Party Executives who knew or should have known of Allen Thomas' illegal acts unfettered authority in this attempted cover-up of Election Fraud committed by their endorsed County Commissioner Candidate/Incumbent(S) who should have been sanctioned and censored by that same party the backdoor statutory ability to name their own replacement establishment candidate who may very well be of the same felonious mind-set as that of Allen Thomas, his alleged cohorts and that local democratic party who clearly turned a blind eye towards the illegal conduct of Allen Thomas. This alone is a concrete rationale as to why this Court should act in the preservation of protecting our democracy from rouge actors i.e., Allen Thomas, and grant Plaintiff's DeclaratoryInjunctive Relief prayer. As such, **_September 9, 2022_**, is the timeframe in which The Hoke County Democratic Party would be permitted by Statute to under GS 163-114, to such authority. Without this Court's intervention Plaintiff(S) have no other remedies at law in preventing further injury by The NCSBE's refusal to act as appointed "creatures by statute," whose fiduciary duty is to not conflict with NCGS, but rather to work in harmony therewith as administrators in upholding the integrity of free and fair elections prerequisites accorded North Carolina's Election Jurisprudences.

In February 2022, Dr. Carr reported to the Hoke County Board of Elections Mr. Thomas had offered/bribed to pay Dr. Carr $20,000 a *quid pro quo* to not run for county commissioner along with another candidate challenger, Mr. Carlton Ray Barber. The illegal quid pro quo briberies occurred on

the same day, from the identical phone numbers—the first being from a County Office, and the final call from Mr. Thomas' own personal cell to both candidates named above.

On 9 May 2022, Dr. Carr reported to The Hoke County Board of Elections Director that he and his campaign believed and had observed Mr. Thomas, and his election "ballot committee team" of affiliate incumbent candidates, and their electioneers were bribing voters. The next day, the Hoke County Board of Election's Director caught Mr. Thomas giving money to a voter at a designated handicap curbside voting site Voting Booth. Dr. Carr's belief that Mr. Thomas and other candidates were buying votes—expressed on May 9—was confirmed on May 10.

Mr. Thomas was photographed and videoed paying this voter money, and Dr. Carr presented this clear and convincing evidence—photograph and video to the State Board of Elections, The Wake County Superior Court, and, ultimately, the North Carolina Appeals Court where it is currently stalled, pending an Appellate decision that by the time it has been heard and adjudicated would once again be deemed moot, and the imminent General Election of November 8, 2022 would be finalized as a foregone conclusion.

Dr. Carr filed a protest with the Hoke County Board of Elections. He supported that protest with affidavits from Myra R. McKoy and Deltarina V. Carr. Rather than holding [a] consideration and evidentiary hearing or receiving evidence, the Hoke County Board of Elections denied Dr. Carr's protest by a three (3) minute "consideration vote" opposed to the required "consideration hearing" because it concluded "that the protest does not establish probable cause to believe that a violation of election law or regulatory of misconduct has occurred."

Dr. Carr then appealed to the State Board of Elections. The State Board of Elections likewise summarily denied Dr. Carr's protest, without a hearing or receiving evidence.

Dr. Carr then appealed to the Superior Court seeking a writ of mandamus, and thereafter to The North Carolina Appellate Court petitioning and expedited writ of supersedeas. The Board concedes Dr. Carr timely filed his protest with the Hoke County Board of Elections, the State Board of Elections, and the Superior Court. Yet Dr. Carr did not obtain a stay from the Superior Court within ten days of filing his appeal with the Superior Court due to that court's temporary misplacement of the file as delivered by The US Postal Service on (certified return receipt) on June 23, 2022, but not found and time stamped until June 27, 2022. Which however, was still timely filed. Upon the discovery of the error by The Superior Court, Judge John Smith, directed that the Motion for Stay be placed on the court's calendar immediately—but by that time the ten (10) day statutory period in obtaining a Stay had since passed at no fault of Petitioner. The election results were certified, so the State Board of Elections argued the Superior Court lacked jurisdiction under N.C.G.S. § 163-182.14(b). The Superior Court agreed and, on 2 August 2022, entered an order dismissing this action.

The State Board of Elections informed Dr. Carr and the Superior Court that it would begin printing ballots for the November Hoke County Commissioners' Election on 12 August 2022 irrespective of the obvious question of due process subsumed under Article Fourteen. Plaintiffs, are also unable to defend against actual voter frauds that has tainted the entire Hoke County Commissioner's race by unscrupulous actors who've brought into question the fairness of a free and non-tainted integrios election primary election process guaranteed and protected by The Voting Rights Act of 1965 as Registered Voters, Constituents and Representative Candidate for a sizable number of electors of Hoke County, North Carolina. All of this harms Plaintiffs' core First Amendment rights as voters, candidates

and citizens who wish to  implement and develop a new direction in policies, regulations and laws commensurate with North Carolina General Statutes in Hoke County, North Carolina.

**II. Declaratory Injunctive Relief is Appropriate Because the November Election is Imminent and Mr. Thomas May Benefit from Fraud.**

Permanent Declaratory Injunctive Relief is an extraordinary remedy which is appropriate, all things considered herein, will restrain defendant NCSBE from doing certain acts as obstructing the statutory framework as "creatures of North Carolina General Statutes," who are not free to legislate their own generated Election Laws, but is merely granted powers to create rules that are not in foul of statutory jurisprudence codified by The North Carolina General Assembly irrespective of what political party Government appoints them to administer NC General Statutes—even then, they are powerless to simply create rules of engagement as they will as The NCSBE has done in this case—but is bound to a Rules Committee's Review of proposed changes in the Rules Process. It is not Legislative Intent by way of appointment to The NCSBE for that Board to pick and choose what laws to enforce, and those at whim they choose to overlook for political purposes of party or candidate. Nevertheless, a candidate for office being photographed and videoed giving a voter money is an extraordinary circumstance. Not to negate the facts of this matter of being caught redhanded doing so by The Hoke County Board of Elections Director herself and other eyewitnesses. The NCSBE refusal to enforce statutory law, and refusal to follow other statutory provisions laid out by The North Carolina General Assembly has caused Plaintiffs irreperable harm if relief is not granted by this court which outweighs any harm to any opposing party—here, NCSBE. The Court's grant of injunction is not adverse in anyway to public interest, but to the contrary, is in the public interest in having cofidence in our election process. When reviewed on the merits, Plaintiffs' claims are meritorious and has the liklihood of succeeding with the competent irrefutable evidence as part of this prayer for relief when adjudicated of this Court's "sliding scale" of review for abuse of discretion *inter alia*. If Mr. Thomas takes office the de facto officer

doctrine may allow him to retain some benefit from office. Because of that benefit and the merit of Dr. Carr's claims, this Court should issue the permanent declaratory injunction.

The first reason to issue the declaratory injunction is straightforward. Dr. Carr alleges Mr. Thomas paid for votes in the 17 May 2022 primary election and violated the statutory 50 foot Rule. If found true, Mr. Thomas should not be allowed to run for office in the November 2022 election. The NCSBE knew of these illegal acts, but failed to act. Printed ballots possessing this knowledge. Any expenditures to remove Mr. Thomas's name from the ballot and replace it with Dr. Carr's is weighed on NCSBE.1

---

1 As the candidate with the next highest number of votes in the primary, Dr. Carr should replace Mr. Thomas if Mr. Thomas is removed from the ballot.

The State Board of Elections may now employ their all so familiar argument that Dr. Carr's claims are moot since it refused to act, investigate and follow statutory procedures in violation of its limited capacity as "creatures" of those same statutes ignored and codified as North Carolina General Statutes because instead of addressing Allen Thomas' Election Frauds to rush print ballots without adhering to statute, upon information and belief The NCSBE may argue that this court is powerless to grant injunction as The NCSBE has already printed ballots. The NCSBE could and should have prevented Mr. Thomas's name being listed on Hoke Count's ballots when he may have prevailed in the primary because of fraud, this Court should issue the Declaratory Injunctive Relief and thereafter Order The NCSBE to scrap the ill printed ballots, remove Allen Thomas' name from said ballot, and since Dr. Carr, was the fourth in line of contenders, Order his name to replace Allen Thomas' on the General Election Ballot since there is still time (limited as it is under circumstance 2 months and 28 days to be exact).

The second reason to issue the Declaratory Injunctive Relief is more complicated and rests on the results of Mr. Thomas being elected as a Hoke County Commissioner.

A de facto officer is "one who occupies a [public] office under some color of right, and for the time being performs its duties with public acquiescence, though having no right in fact." *In re Wingler*, 231 N.C. 560, 58 S.E. 2d 372 (1950). The General Assembly has codified this doctrine at N.C.G.S. § 128-6. This Court and the North Carolina Supreme Court have upheld the acts of de facto officers even though they were ineligible to hold office. *E.g.*, *People ex rel. Duncan v. Beach*, 294 N.C. 713, 242 S.E.2d 796 (1978) (judge serving well past the statutory mandatory retirement age); *State v. Lewis*, 107 N.C. 967, 972, 12 S.E. 457, 458 (1890) (sustaining a criminal conviction where the judge presiding was constitutionally ineligible to his office).

The de fact officer doctrine applies to municipalities as well. *Wrenn v. Kure Beach*, 235 N.C. 292, 295, 69 S.E.2d 492, 494 (1952); *Smith v. Carolina Beach*, 206 N.C. 834, 175 S.E. 313 (1934). In *Smith*, Carolina Beach allowed only landowners to vote town council election. *Smith*, 206 N.C. at 836, 175 S.E. at 315. The town council then issued $50,000 of bonds. *Id.* Although the election was patently unconstitutional, the North Carolina Supreme Court held the bonds were valid under the de facto officer doctrine. *Id* .at 837, 175 S.E. at 315.


Suppose Dr. Carr's allegations are found true and Mr. Thomas is elected in November. If he issues bonds, approves zoning decisions, hires employees, or approves contracts, those actions are likely valid under the de facto officer doctrine. Those actions could benefit Mr. Thomas and still be valid. *E.g.*, *Rauseo v. New Hanover Cty.*, 118 N.C. App. 286, 287, 454 S.E.2d 698, 699 (1995) (county commissioner may approve fire station near his home); *Cty. of Lancaster v. Mecklenburg Cty.*, 334 N.C. 496, 511, 434 S.E.2d 604, 614 (1993) (county commissioners may issue themselves, though a zoning administrator, a special use permit). This would not be the first time the Hoke County Commissioners were alleged to benefit from their office. *Walker v. Hoke Cty.*, 260 N.C. App. 121, 124, 817 S.E.2d 609, 612 (2018). Although the de facto officer doctrine necessarily requires speculation about what Mr. Thomas may do in office, it does not require speculating about whether Mr. Thomas believe the office

will financially benefit him. Mr. Thomas was willing to pay voters to become county commissioner. Mr. Thomas even offered to pay Dr. Carr $20,000. Mr. Thomas expects to realize some benefit from becoming a county commissioner. This Court should issue the Emergency Declaratory Injunctive Relief to prevent Mr. Thomas from realizing that benefit.

### III. Dr. Carr's Complaint for Declaratory Injunctive Relief has Merit.

Dr. Carr's appeal centers on two arguments: (1) the State Board of Election's actions were ultra vires and void and (2) Dr. Carr need not allege or prove irregularities or improprieties affecting the outcome of the election to set the election aside. Both arguments follow directly from statute.

Citizens wishing to protest an election must begin with the county board of elections. N.C.G.S. § 163-182.10 (2021). The county need not receive evidence or even hold a hearing on the protest. It can simply "dismiss the protest" if it believes "that one or both [statutory requirements] are not met." N.C.G.S. § 163-182.10(a)(1) (2021). The citizen must then appeal to the State Board of Elections. N.C.G.S. § 163- 182.11 (2021). When the State Board of Elections consider the county board of elections' decision, it "may" do any of the following:

*(1) Decide the appeal on the basis of the record from the county board, as long as the county board has made part of the record a transcript of the evidentiary hearing.*

*(2)Request the county board or any interested person to supplement the record from the county board, and then decide the appeal on the basis of that supplemented record.*

*(3) Receive additional evidence and then decide the appeal on the basis of the record and that additional evidence.*

*(4) Hold its own hearing on the protest and resolve the protest on the basis of that hearing.*

(5)Remand the matter to the county board for further proceedings in compliance with an order of the State Board.

N.C.G.S. § 163-182.11(b).

It is herewith noted that the word "may" denotes that The NCSBE has a choice of choosing one of the options codified by said instructive statute, or all—it nonetheless does not give NCSBE the luxury to ignore the five options as created by said statute. (Emphasis in original).

N.C.G.S. § 163-182.11(b). The State Board of Elections must also follow the hearing procedures for a county board of elections and make findings of fact and conclusions of law "except where they are clearly inapplicable." *Id*.

The State Board of Elections chose option (6)—dismiss Dr. Carr's appeal without holding a hearing or receiving evidence—even though N.C.G.S. § 163-182.11 does not give it this authority. The State Board of Elections did not hold a hearing. Nor did it make findings of fact or conclusions of law. That hampered the Superior Court, NC Appellate Court (and this Court's) review of the State Board of Elections action, undermining the goal of N.C.G.S. § 163-182.11.

The State Board of Elections had no authority to summarily dismiss Dr. Carr's appeal. *See Boston v. N.C. Private Protective Services Bd.*, 96 N.C. App. 204, 207, 385 S.E.2d 148, 150-51 (1989) (state boards are creatures of statute and only have powers expressly granted by statute). The State Board's ultra vires action conflicts with N.C.G.S. § 163-182.11. The State Board of Elections cannot, by administrative regulation, give itself authority the General Assembly has not given it. Its dismissal of Dr. Carr's appeal is void. A "void order is a nullity, binding on no one, and may be freely ignored." *R. E. Uptegraff Mfg. Co. v. Int'l Union of Elec., Radio & Mach. Workers*, 20 N.C. App. 544, 549, 202

S.E.2d 309, 313 (1974). Any actions flowing from that decision—including the certification of the May 2022 Hoke County Primary— are also void.

The State Board of Elections' justification for dismissing Dr. Carr's appeal also contradicts the General Statutes. The State Board of Elections claims Dr. Carr must allege or prove actions affecting the outcome of the election. Chapter 163 says otherwise. The State Board of Elections "may order a new election" in at least four cases:

(1) Ineligible voters *sufficient in number to change the outcome of the election* were allowed to vote in the election, and it is not possible from examination of the official ballots to determine how those ineligible voters voted and to correct the totals.

(2) Eligible voters *sufficient in number to change the outcome of the election* were improperly prevented from voting.

(3) Other irregularities affected a *sufficient number of votes to change the outcome of the election.*

(4) Irregularities or improprieties occurred to such an extent that they taint the results of the entire election and cast doubt on its fairness.

N.C.G.S. § 163-182.13(a) (2021) (emphasis added). Section 163-182.13(a)(1) to (3) use almost identical language: sufficient in number to change the outcome of the election. But that language disappears when we get to (a)(4). Subsection (a)(4) only requires irregularities or improprieties that "taint the results" of the election and "cast doubt on its fairness." A candidate (Mr. Thomas) paying a voter in a curbside voting booth in broad daylight casts doubts on the fairness of the election. This was the day after Dr. Carr told the Hoke County Board of Elections that Mr. Thomas's campaign was paying voters. Dr. Carr, his campaign staff, and his supporters believe Mr. Thomas bought votes. And they proved he paid at least one voter. The allegation that a candidate paid voters is sufficient to taint the election and cast doubts on its fairness—even if the allegation cannot show the candidate paid enough voters to affect the outcome.

Dr. Carr's case has merit and if this Court delays Mr. Thomas may benefit from his fraud. This Court should issue the Permanent Declaratory Injunctive Relief.

Extraordinary circumstances have made it impractical for Dr. Carr to seek a stay in the trial tribunal, Appellate Court or deposit security before seeking the Emergency Declaratory Injunctive Relief. The trial court ruled on 2 August and ballots were purportedly printed on 12 August. Dr. Carr has not had time to be heard on a motion to stay in the trial court nor The NC Appellate Court. These extraordinary circumstances, the possible benefits to Mr. Thomas of taking office, and the merit of Dr. Carr's appeal justify the Declaratory Injunctive Relief sought here.

**MOTION FOR TEMPORARY STAY**

Dr. Carr also moves the Court, under Federal Rules,to issue a temporary stay while it considers Dr. Carr's Emergency Complaint for Declaratory Injunctive Relief. Dr. Carr is informed and believes ballots for the November Hoke County Commissioners' election has already been printed purportedly on 12 August 2022. Dr. Carr has previously filed his petition for writ of mandamus with The Wake County Superior Court, NC Appellate Court and motion dispositive motions theretofor as expeditiously as possible, from The North Carolina Court of Appeals denial of his writ of supersedeas entered on 29, August, 2022, at approx. 5:15pm—4 days or less after the North Carolina Appeals Court ruled. This Court should allow the State Board of Elections time to file a response to this petition before it rules on the petition itself, considering the statutory deadline date pursuant to GS § 163-114 of September 9, 2022. But by the time the State Board of Elections responds, as has been The NCSBE's delay tactics in this case, the pending imminent and fast approaching date of September 9, 2022, may have passed and will inevitably injure Plaintiffs further unless this Court exercise its discretion to prevent such. A temporary stay is necessary to prevent the NCSBE's stall tactic that has become a general practice of statutory strategy of running out the time clock until the twelve o'clock hour before

this Court can fully consider Dr. Carr's Emergency Complaint for Permanent Declaratory Injunctive Relief while Allen Thomas, fraudulent election violation behaviors are truly investigated, prosecuted and thereafter declaration of his full disqualification as a viable candidate for the November 8, 2022's General Election. Whereas, such additional delay would benefit the compromised Hoke County Democrat Party Executives to replace Mr. Thomas, with a candidate that did not vie for siad County Commissioner position during and in relations to the May 17, 2022's tainted Primary Election process by reason of actual Fraud and misconduct of Thomas entering at least twice in a handicap voting booth *inter alia.*

## MOTION TO EXPEDITE

Dr. Carr further moves the Court, under Federal Rules to expedite the production of the record (including The Wake County Court's Transcripts), the filing of briefing, oral argument (if the Court schedules any), and the Court's consideration of this Emergency Permanent Declaratory Injunctive action.

This Federal Court, and The North Carolina's appellate courts routinely expedite Emergency Declaratory Injunctive cases raising election law issues on the eve of elections. *E.g. Harper v. Hall,* 379 N.C. 656, 658 (2021); *Stephenson v. Bartlett,* 358 N.C. 149, 594 S.E.2d 24 (2004) (unpublished). This Court considers many appeals and considers them thoroughly. It often takes this Court at least a year from filing the record on Injunctions to issue a decision. If this Court were to take a year considering this case, the November 2022 election would be well over by the time the Court issued a decision. That would deny Dr. Carr relief, prevent a decision on meritorious claims, and possibly allow Mr. Thomas to benefit from his inequities. Suspending the Rules is also in the public interest to avoid delay or distribution to the November 2022 election.

If this Court does expedite this Emergency Declaratory Injunction, Dr. Carr requests that the Court contact Dr. Carr and the State Board of Elections before issuing an order setting this Injunctive' schedule. Dr. Carr's has not had time to confer with the State Board of Elections' counsel and would like to ensure that the scheduling order respects the State Board of Elections' counsel's schedule as much as possible under the circumstances.

**CAUSES OF ACTION**

(Violation of Plaintiffs' Rights Guaranteed by the First and Fourteenth Amendments)

Plaintiffs reassert each preceding allegation as if set forth fully herein.

1. NCSBE had no authority to summarily dismiss Dr. Carr's appeal. *See Boston v. N.C. Private Protective Services Bd.*, 96 N.C. App. 204, 207, 385 S.E.2d 148, 150-51 (1989) (state boards are creatures of statute and only have powers expressly granted by statute). The State Board's ultra vires action conflicts with N.C.G.S. § 163-182.11.

2. The NCSBE cannot, by administrative regulation, give itself authority the General Assembly has not given it.

3. The NCSBE's dismissal of Dr. Carr's appeal is void. A "void order is a nullity, binding on no one, and may be freely ignored." *R. E. Uptegraff Mfg. Co. v. Int'l Union of Elec., Radio & Mach. Workers*, 20 N.C. App. 544, 549, 202 S.E.2d 309, 313 (1974). Any actions flowing from that decision— including the certification of the May 2022 Hoke County Primary— are also void.

4. NCSBE's failure to investigate Allen Thomas's Election Fraud Conduct, disqualify Thomas form the November 2022's General Election, refer said matter to The NC Attorney General's Criminal Division —opting instead to seemingly represent Thomas' interests opposed to Hoke citizenry's interests created a real conflict of interest; failure to follow GS statutory prerequisites, to wit, NCSBE chose option (6)

—dismiss Dr. Carr's appeal without holding a hearing or receiving evidence—even though N.C.G.S. § 163-182.11 does not give it this authority. The State Board of Elections did not hold a hearing. Nor did it make findings of fact or conclusions of law. That hampered the Superior Court, NC Appellate Court (and this Court's) review of the State Board of Elections action, undermining the goal of N.C.G.S. § 163-182.11. And inevitably violated Plaintiffs' Fourteenth Amendment Rights to The Constitution of The United States of America (due process); this despite Plaintiffs' compliance with all applicable requirements under state law governing Protest and Appeal Procedures as were timely filed in accordance with North Carolina General Statutes and The NCSBE's Rules, severely burdens Plaintiffs' First and Fourteenth Amendment rights.

5. NCSBE's failure to investigate, disqualify and refer Allen Thomas, and his "Ballot Committee Team's Election Fraud Violations to The North Carolina Attorney General Office (Criminal Division) has casted serious doubts on the integrity and fairness of the Hoke County Primary Election Process is/ was not justified by any legitimate or compelling state interest. Yet to the contrary.

6. NCSBE's failure to adhere to and apply NCGS harmoniously with their discretionary rules has caused injury to Plaintiffs (including Dr. Lent Carr, Candidate for Hoke County Commissioner), and violates rights guaranteed to Plaintiffs by the First and Fourteenth Amendments. As well contradicts in contravention statutory provisions completely out of sync with legislative intent.

## CONCLUSION AND PRAYER FOR RELIEF

7. **WHEREFORE**, Plaintiffs respectfully request that the Court:

A. Enter a declaratory judgment holding that NCSBE's failure to investigate Allen Thomas' Election Fraud Conduct, his entering an unauthorized Handicap Parking "Voting Booth" site; passing money to electors in exchange for votes, and then fail to follow NCGS's dictates as codified pursuant to N.C.G.S. § 163-182.11 is unconstitutional as applied; The State Board's ultra vires action conflicts with N.C.G.S. § 163-182.11, and therefore void, and actions flowing from that decision to deny Dr. Carr's Appeal—including the certification of the May 2022 Hoke County Primary— are also void. Its dismissal of Dr. Lent C. Carr's appeal is void. A "void order is a nullity, binding on no one, and may be freely ignored;

B. Enter an order directing NCSBE to disqualify Allen Thomas, in accordance with the primi facie evidence in this case; Mr. Thomas' own admission; because The Hoke County Election Board Director unequivocally caught Thomas in the very act, and various other witnesses has testified via Sworn Affidavit, and then Candidate Carlton Ray Barber witnessed Thomas' egregious "pay for vote" scheme as reported in The Hoke County Board of Elections Director Official Report. As a direct and proximate result of Thomas' illegal actions and conduct, and because Dr. Lent C. Carr. II, Plaintiff, was the fourth runner up during the May 17, 2022's Primary Election— declare Dr. Lent C. Carr, the third candidate winner to be immediately placed on a newly drafted Ballot for The Imminent General Election of November 8, 2022, with sufficient time to salvage his campaigning efforts. Furthermore, Order The NCSBE to forthrightly issue Plaintiff, Dr. Lent C. Carr, II, his Certificate of Nomination/Election as though the same was issued had the NCSBE had not violated Plaintiffs' rights protected under Constitutional Amendments 1 and 14;

C. Award litigation costs and any applicable attorney's fees pursuant to 42 U.S.C. § 1988; and

D. Retain jurisdiction over this action and grant the Plaintiffs any further relief which may in the discretion of the Court be necessary and proper.

E. Grant Plaintiffs' Complaint for EMERGENCY Declaratory Injunctive Relief

F. Award other and further relief as the Court deems proper.


DATED THIS _5 th_ DAY OF SEPTEMBER, 2022


Respectfully Submitted,

Lent Christopher Carr, II, Plaintiff #1
3300 Laurinburg Road
Raeford, North Carolina 28376
Suite 101
E: drlentcarr@nationalcongressional.org
(919)-417-6768


Isaac Jenkins, Plaintiff #2
3300 Laurinburg Road
Raeford, North Carolina 28376
Suite 104
(910)-528-1038

_____

Angela M. Schwarz, Plaintiff #3
3300 Laurinburg Road
Raeford, North Carolina 28376
Suite 108
(910)-709-6475

_____

Harley Johnson, Plaintiff #4
3300 Laurinburg Road
Raeford, North Carolina 28376
Suite 113
(910)-691-4388

_____

Concerned Citizens for Community Action
(CCFCA) Hoke County Chapter
3300 Laurinburg Road
Raeford, North Carolina 28376
Suite 117
(910)-848-1133

NORTH CAROLINA   )
                           )           **VERIFICATION**

HOKE COUNTY      )

LENT CHRISTOPHER CARR, II, first being duly sworn, deposes and says:

That he is the Plaintiff in the foregoing action; that he has read the foregoing COMPLAINT FOR EMERGENCY DECLARATORY INJUNCTION, and knows the contents thereof; that the same is true of his own knowledge except those matters and things set out on information and belief, and as for those matters and things, he believes them to be true.

_____
LENT CHRISTOPHER CARR, II

SWORN TO and subscribed before me this the 6TH day of September, 2022.

_____
Notary Public

My Commission Expires:
_Nov 06 2024_

<center>**CERTIFICATE OF SERVICE**</center>

     **THIS IS TO CERTIFY** that the undersigned served copies of the foregoing by depositing the same, enclosed in a postpaid wrapper, properly addressed to the parties in interest as shown below, at their last known address in a post office or official depository under the exclusive care and custody of the United States Postal Services, or by the Court electronic case filing system in the manner prescribed by law to those parties registered with the system for service in this Emergency Permanent Declaratory Injunction as indicated.

<div style="margin-left: 40%">

Mary Carla Babb
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919)-716-6573
State Bar No. 25731
mcbabb@ncdoj.gov

</div>

THIS the 5th day of September, 2022.

<div style="margin-left: 35%">

LENT CHRISTOPHER CARR, II
3300 Laurinburg Road
Raeford, North Carolina 28376
(919)-417-6768
E: drlentcarr@nationalcongressional.org
or lentcarr@gmail.com

</div>



# SAMPLE BALLOT

**Sample Ballot**
**Hoke County, North Carolina**
**November 8, 2022**

**B0001**

## BALLOT MARKING INSTRUCTIONS:
A. With the marking device provided or a black ball point pen, completely fill in the oval to the left of each candidate or selection of your choice as shown.
B. Where authorized, you may write in a candidate by filling in the oval and writing the name on the Write-in line.
C. If you tear, deface or wrongly mark this ballot, return it to request a replacement.

## FEDERAL OFFICES

### US Senate
(You may vote for ONE)

- Matthew Hoh — Green Party
- Cheri Beasley — Democratic Party
- Shannon W. Bray — Libertarian Party
- Ted Budd — Republican Party
- Write-in

### US House of Representatives District 9
(You may vote for ONE)

- Ben Clark — Democratic Party
- Richard Hudson — Republican Party

## STATE OFFICES

### NC Supreme Court Associate Justice - Seat 3
(You may vote for ONE)

- Richard Dietz — Republican Party
- Lucy Inman — Democratic Party

### NC Supreme Court Associate Justice - Seat 5
(You may vote for ONE)

- Sam J. Ervin IV — Democratic Party
- Trey Allen — Republican Party

### NC Court of Appeals Judge Seat 8
(You may vote for ONE)

- Julee Tate Flood — Republican Party
- Carolyn Jennings Thompson — Democratic Party

### NC Court of Appeals Judge Seat 9
(You may vote for ONE)

- Brad A. Salmon — Democratic Party
- Donna Stroud — Republican Party

### NC Court of Appeals Judge Seat 10
(You may vote for ONE)

- John M. Tyson — Republican Party
- Gale Murray Adams — Democratic Party

### NC Court of Appeals Judge Seat 11
(You may vote for ONE)

- Darren Jackson — Democratic Party
- Michael J. Stading — Republican Party

### NC State Senate District 24
(You may vote for ONE)

- Darrel (BJ) Gibson, Jr. — Democratic Party
- Danny Earl Britt, Jr. — Republican Party

### NC House of Representatives District 48
(You may vote for ONE)

- Garland E. Pierce — Democratic Party
- Melissa Swarbrick — Republican Party

## DISTRICT OFFICES

### NC District Court Judge District 19D - Seat 1
(You may vote for ONE)

- Warren McSweeney — Republican Party

### NC District Court Judge District 19D - Seat 2
(You may vote for ONE)

- Beth Tanner — Republican Party

### NC District Court Judge District 19D - Seat 5
(You may vote for ONE)

- Regina M. Joe — Democratic Party

## COUNTY OFFICES

### Board of Commissioners
(You may vote for THREE)

- David Frump — Republican Party
- Christopher Holland — Republican Party
- Tony Hunt — Democratic Party
- Harry Southerland — Democratic Party
- Allen Thomas, Jr. — Democratic Party
- Johnny Boyles — Republican Party

### Clerk of Superior Court
(You may vote for ONE)

- Evelyn M. McLeod — Democratic Party

**Continue voting next side →**

North Carolina

Ballot Style B0001

## – VOTE BOTH SIDES –

Case 5:22-cv-00353-FL   Document 1   Filed 09/06/22   Page 32 of 33

## Sheriff
(You may vote for ONE)

- ⬭ **Stevie Joe**
  Republican Party
- ⬭ **Roderick C. Virgil**
  Democratic Party

## NONPARTISAN OFFICES

### Board of Education
(You may vote for THREE)

- ⬭ Deltarina Carr
- ⬭ Ruben Castellon
- ⬭ Tony Cunningham, Sr.
- ⬭ Tonika McGeachy Dunbar
- ⬭ John F. Harry
- ⬭ Micheaux Hollingsworth
- ⬭ Christopher A. Leach
- ⬭ Della Maynor
- ⬭ Angela G. Southerland
- ⬭ Catherine Blue
- ⬭ Write-in
- ⬭ Write-in
- ⬭ Write-in

### Soil and Water Conservation District Supervisor
(You may vote for TWO)

- ⬭ Neil McKenzie
- ⬭ Leonard Baldwin
- ⬭ Write-in
- ⬭ Write-in

### End of Ballot

North Carolina    Ballot Style B0001

-- VOTE BOTH SIDES --

SAMPLE BALLOT

Case 5:22-cv-00353-FL    Document 1    Filed 09/06/22    Page 33 of 33